UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
NIRVA CHERENFANT, PATRICIA
CHERENFANT, and S.R., an infant, by her
mother and natural guardian, NIRVA            14 CV 240 (KAM) (JO)
CHERENFANT,

                 Plaintiffs,

     -against-

                                                 **AMENDED COMPLAINT**
CITY OF NEW YORK, WILLIE JOHNSON,
JUSTIN LENZ, JAMES O'NEILL, PATRICK
RYAN, TINA EVERETT, JOSEPH
FERNANDEZ, CHARLES INGRASSIA,
GABRIEL NACELEWICZ, DAVID
SOLMONSOHN, CHRISTOPHER WARD,
and BRIAN WOOD,
                                            **PLAINTIFF DEMANDS**
                 Defendants.                 **A TRIAL BY JURY**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

        Plaintiffs Nirva Cherenfant, Patricia Cherenfant, and S.R., an infant by her mother and natural guardian, Nirva Cherenfant, by their attorneys, Lumer & Neville, as and for their Amended Complaint, hereby allege as follows, upon information and belief:

### PARTIES, VENUE and JURISDICTION

        1.      At all times hereinafter mentioned, plaintiff Nirva Cherenfant, an adult female, was a resident of Kings County, within the State of New York.

        2.      At all times hereinafter mentioned, plaintiff Patricia Cherenfant, an adult female and daughter of plaintiff Nirva Cherenfant, was a resident of Kings County, within the State of New York.

        3.      At all times hereinafter mentioned, plaintiff S.R., a female infant, who is currently sixteen years-old, resided with her mother and natural guardian, Nirva Cherenfant,

in Kings County, in the State of New York.

4. At all relevant times hereinafter mentioned, defendant City of New York ("New York City"), was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Police Department ("NYPD"), and their employees.

5. At all times hereinafter mentioned, defendant Willie Johnson, whose tax reg. number is 925519, was a member of the NYPD and employed, retained, trained, and supervised by New York City.

6. At all times hereinafter mentioned, defendant Justin Lenz, whose tax reg. number is 897861, was a member of the NYPD and employed, retained, trained, and supervised by New York City.

7. At all times hereinafter mentioned, defendant James O'Neill whose tax reg. number is 930878, was a member of the NYPD and employed, retained, trained, and supervised by New York City.

8. At all times hereinafter mentioned, defendant Patrick Ryan, whose tax reg. number is 904977, was a member of the NYPD and employed, retained, trained, and supervised by New York City.

9. At all times hereinafter mentioned, defendant Tina Everett, whose shield number is 3291, was a member of the NYPD and employed, retained, trained, and supervised by New York City.

10. At all times hereinafter mentioned, defendant Joseph Fernandez, whose shield number is 1815, was a member of the NYPD and employed, retained, trained, and supervised by New York City.

11. At all times hereinafter mentioned, defendant Charles Ingrassia, whose shield number is 11159, was a member of the NYPD and employed, retained, trained, and supervised by New York City.

12. At all times hereinafter mentioned, defendant Gabriel Nacelewicz, whose shield number is 6511, was a member of the NYPD and employed, retained, trained, and supervised by New York City.

13. At all times hereinafter mentioned, defendant David Solmonsohn, whose shield number is 3336, was a member of the NYPD and employed, retained, trained, and supervised by New York City.

14. At all times hereinafter mentioned, defendant Christopher Ward, whose shield number is 6633, was a member of the NYPD and employed, retained, trained, and supervised by New York City.

15. At all times hereinafter mentioned, defendant Brian Wood, whose shield number is 5728, was a member of the NYPD and employed, retained, trained, and supervised by New York City.

16. Each of the individually named defendants are sued herein in their individual and official capacities.

17. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331,

1343 and 1367, and 42 U.S.C. § 1983.

18. Venue is properly laid, pursuant to 28 U.S.C. Section 1391, et seq. in the Eastern District of New York, where plaintiffs and defendant City of New York reside, and where the majority of actions complained of herein occurred.

## RELEVANT FACTS

19. At all relevant times herein, Nirva Cherenfant, her adult daughter Patricia Cherenfant, and her infant daughter, S.R., resided together in an apartment at 221 Linden Boulevard, in Kings County, New York (the "premises"), along with other of Nirva Cherenfant's children.

20. On August 28, 2013, at or between about 6:20 a.m., plaintiffs were lawfully present and asleep inside the premises when the individual defendants kicked in or otherwise loudly and forcibly broke in through the front door of the apartment.

21. The defendants were, at all relevant times herein, members of the Narcotics Bureau Brooklyn North unit.

22. Brandishing their guns, the defendants seized, detained, and handcuffed each of the plaintiffs, as well as other infant plaintiffs present in the apartment.

23. The defendants were not invited into the premises nor was their entry consented to by any of the plaintiffs, or any other individual authorized to so consent.

24. There were no exigent circumstances present that would permit defendants to enter the premises absent a warrant or invitation.

25. The defendants did not display a warrant to justify their entry into the premises and refused to produce one after the plaintiffs asked.

26. The plaintiffs, including the infant S.R., were eventually transported in handcuffs from their apartment to a local area NYPD station house, where they were further detained and processed.

27. Plaintiff Nirva Cherenfant had recently suffered a physical injury to her back which had resulted in surgery, and her placement in handcuffs caused her to suffer significant and traumatic pain. Notwithstanding her obvious suffering, the defendants refused to provide any remedial relief, such as front-cuffing Ms. Cherenfant.

28. The defendants also placed overly tight handcuffs on Patricia Cherenfant, causing her to suffer pain, numbness and other concomitant injuries.

29. While plaintiffs were imprisoned by the defendants, defendant Johnson completed arrest paperwork in which, upon information and belief, he alleged that the narcotics and paraphernalia were recovered inside the premises in such a manner as to suggest that the three plaintiffs actually or constructively possessed these items.

30. All of these allegations were false and Johnson knew them to be false at the time they were made.

31. Johnson forwarded these false allegations to the Kings County District Attorney ("KCDA") or the New York City Criminal Court ("NYCCC") in order to justify the arrest and to persuade the KCDA or NYCCC to commence and/or continue the plaintiff's criminal prosecution.

32. Johnson knew and understood that the KCDA and the NYCCC, in evaluating whether to commence a criminal prosecution against the plaintiff, were relying on the truthfulness of his claims and statements, and assuming that all of these factual statements and claims Johnson was relaying were truthful in all material respects.

33. Johnson further knew and understood that he was obligated to provide any and all exculpatory information to the KCDA and the NYCCC and that he was expected to turn over to or otherwise provide the KCDA with all material information concerning the arrest, regardless of whether it was inculpatory or exculpatory.

34. As a direct result of these allegations, Johnson received authority from a supervisory officer with the NYPD to issue each plaintiff a Desk Appearance Ticket ("DAT"), charging each plaintiff with criminal possession of a controlled substance and criminal possession of narcotics paraphernalia.

35. The entry into the premises and arrests of plaintiffs were carried out under the direct supervision of Captain Justin Lenz, who was the commanding officer on the scene, and Lieutenants James O'Neill and Patrick Ryan, who were both supervisory officers on the scene. The remaining individual defendants each have the rank of detective, as does defendant Johnson.

36. The plaintiffs each appeared in Court as required by their DATs, only to be informed that their cases were not yet ready and were or were being dismissed.

37. At no time did defendants have probable cause to seize, detain or arrest any of the plaintiffs, nor was it reasonable for the defendants to believe that such cause

existed.

38. Despite the absence of probable cause and lack of evidence of criminal conduct by any of the plaintiffs, the defendants proceeded with their arrest, and did so to increase the arrest statistics for their unit, and justify the search warrant application and execution.

39. At no time did any of the defendants, or any other member of the NYPD, take any steps to intervene in, prevent, or otherwise limit the heretofore conduct engaged in by their fellow officers.

40. The defendants' actions in this matter were carried out in accordance with an existing plan or policy created or otherwise condoned by the municipal defendant designed to increase the number of arrests made without regard to probable cause.

41. More precisely, under this policy or plan, officers within the Narcotics Division would secure warrants to search apartments, social clubs, and other locations, and, if any contraband was found, routinely arrest all persons found therein, regardless of whether there was any factual basis for the charges. The arresting officer(s) would then make false statements of fact as to seeing narcotics in plain view or otherwise in the possession of each of the persons arrested.

42. The purpose of this policy or plan was to generate large numbers of arrests to help the NYPD create a false impression of positive activity by their officers.

43. In addition, members of the Narcotics Division are evaluated, at least in part, on the basis of their "activity" which is measured by the number of arrests made,

search warrants secured, and other, similar criteria. Thus, members of the Narcotics Division routinely make arrests and engage in other police activity without sufficient legal cause in order to raise their levels of "activity" and improve the perception of their job performance.

44.     The policy or plan was kept in effect from, at least, 2006 through, at least, the date of plaintiff's arrest, despite the municipal defendant's knowledge that the individuals arrested were not being charged or that there was insufficient evidence to justify the arrests or that the arresting officers were seeking to bolster the arrests with false allegations, and that the prosecuting offices often had found insufficient cause to justify the imposition of charges or continued prosecution if charges were filed.

45.     That at all times relevant herein, the defendants were acting within the scope of their employment, and their acts were done in furtherance of the City of New York's interests and without legal justification or excuse.

## FIRST CAUSE OF ACTION

46.     Plaintiffs repeat the allegations contained in paragraphs "1" through "45" above as though stated fully herein.

47.     Defendants willfully and intentionally seized, searched, detained and arrested plaintiffs without probable cause, and without a reasonable basis to believe such cause existed.

48.     By so doing, the individual defendants, individually and collectively, subjected the plaintiffs to false arrest and imprisonment, unlawful searches of person and

8

property, excessive force, and denial of a fair trial through the fabrication of evidence, and thereby violated and aided and abetted in the violation of plaintiffs' rights under the Fourth, Sixth, and Fourteenth Amendments of the United States Constitution.

49. By reason thereof, the individual defendants have violated 42 U.S.C. §1983 and caused plaintiffs to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of their constitutional rights.

**SECOND CAUSE OF ACTION**

50. Plaintiffs repeat the allegations contained in paragraphs "1" through "49" above as though stated fully herein.

51. In October 2011, following a bench trial in New York State Supreme Court, Kings County, under indictment number 06314-2008, former NYPD narcotics officer Jason Arbeeny was convicted of planting drugs on two individuals and falsifying arrest reports. Before issuing a verdict of guilty, the trial judge scolded the NYPD for what he described as a "widespread culture of corruption endemic in its drug units." The judge further stated that the testimony demonstrated that the NYPD narcotics divisions maintain a "cowboy culture" and that he was "shocked, not only by the seeming pervasive scope of misconduct but even more distressingly by the seeming casualness by which such conduct is employed."

52. Notwithstanding its awareness of the Narcotic Division's pattern of making unlawful arrests and then falsifying their records and testimony to justify and cover up this conduct, the NYPD made no effort to curb, limit, or otherwise prevent this

9

misconduct from continuing.

53. Thus, the City of New York created, approved or condoned the practice and policy, as carried out by the Narcotics Bureau, of making wholesale arrests without probable cause in order to create false or misleading arrest numbers.

54. By reason thereof, defendant has violated 42 U.S.C. §1983 and caused plaintiffs to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of their constitutional rights.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, plaintiffs hereby demand a jury trial of all issues capable of being determined by a jury.

WHEREFORE, the plaintiffs demand judgment against defendants jointly and severally as follows:

    i.    on the first cause of action, actual and punitive damages in an amount to be determined at trial;

    ii.    on the second cause of action, actual damages in an amount to be determined at trial;

    iii.    statutory attorney's fees pursuant to, *inter alia*, 42 U.S.C. §1988 and New York common law, disbursements, and costs of this action; and

    iv.    such other relief as the Court deems just and proper.

Dated:  New York, New York
         May 22, 2014

                    LUMER & NEVILLE
                    Attorneys for Plaintiffs
                    225 Broadway, Suite 2700
                    New York, New York 10007
                    (212) 566-5060

By: _____
     Michael B. Lumer (ML-1947)